IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CONWAY STEEL FABRICATION, INC.**                                                                    **PLAINTIFF**

v.                                       Case No. 4:12CV00616 KGB

**STABRIDG CONSTRUCTION CO., INC.;**
**DICK'S SPORTING GOODS, INC.;**
**RICHARD STACEY; KEITH BRIDGHAM;**
**ELAINE WEEMS**                                                                                            **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Conway Steel Fabrication, Inc. ("Conway Steel") brings a number of state-law causes of action against defendants Stabridg Construction Co., Inc. ("Stabridg"), Dick's Sporting Goods, Inc. ("Dick's"), Richard Stacey, Keith Bridgham, and Elaine Weems, asserting it was not paid for steel it fabricated for a construction project. This case started in Arkansas state court, and Dick's, with the consent of all remaining defendants, removed this case to federal court. Currently pending before the Court is separate defendant Ms. Weems's motion to dismiss for lack of personal jurisdiction (Dkt. No. 17). Conway Steel has responded (Dkt. No. 24). For the reasons set out below, the motion is denied.

    **I.**     **FACTUAL BACKGROUND**

At this stage of the litigation, the pertinent facts are these. Conway Steel is an Arkansas corporation with its principal place of business in Arkansas. Separate defendant Stabridg is an Alabama corporation owned by separate defendants Mr. Stacey and Mr. Bridgham. Stabridg served as the general contractor for the construction of a Dick's store in Conway, Arkansas. Stabridg ordered the structural steel for the project from Conway Steel. Conway Steel commenced work on the project and supplied fabricated steel as contracted pursuant to purchase orders it submitted to Stabridg. That fabricated steel was delivered to the project site, was

accepted by Stabridg and Dick's, and was incorporated into the building.  Ms. Weems is an Alabama resident and an employee of Stabridg.  Conway Steel alleges that Ms. Weems conducted business in Arkansas.

Ms. Weems asserts that she "has never done business of any kind in Arkansas" (Dkt. No. 17, at 1).  She states that she passed through Arkansas on a trip more than 10 years ago.  Ms. Weems further states that she was located in Alabama any time she talked or exchanged emails with Conway Steel.  She submits she was not an officer or stockholder of Stabridg at any time pertinent to the matters alleged in the complaint.  She also asserts that she did not have the authority to sign checks or to decide what, when, if, or in what amount payments were made.  She claims she did not have the authority to determine when or how much Conway Steel would be paid.  Ms. Weems contends that she was not responsible for billing Dick's or for making payments to Conway Steel.  In terms of payments to Conway Steel, Ms. Weems alleges that she merely passed along to Conway Steel the information she received from Mr. Bridgham, the president of Stabridg.

Conway Steel's account of Ms. Weems's involvement differs.  In its complaint, Conway Steel alleges that Ms. Weems "is an individual and resident of the state of Alabama and conducted business in the state of Arkansas.  Weems was materially involved in, and made decisions and gave directions to obtain payment from Dick's Sporting Goods based upon Conway Steel's goods and services and to divert those payments to others instead of paying Conway Steel . . . ." (Dkt. No. 2, at 2).  Conway Steel alleges that "Weems, individually and as agent for Stabridg along with Stacey and Bridgham requested waiver of lien rights by Conway Steel with the representation that Conway Steel would be paid from contract proceeds between

Stabridg and Dick's Sporting Goods" (Dkt. No. 2, at 4-5). "Dick's Sporting Goods required such lien waivers before funds would be advanced to Stabridg directly" (Dkt. No. 2, at 5).

On July 12, 2011, Ms. Weems emailed Conway Steel passing along a form titled "Waiver of Lien to Date," which Dick's initially sent to Stabridg. Ms. Weems's email included directions for Conway Steel to fill out and return the form to Stabridg (Dkt. No. 2, at 19-20).

On September 21, 2011, Ms. Weems again emailed Conway Steel with "another form for Dick's Sporting Goods" (Dkt. No. 2, at 21). She sent an additional "Waiver of Lien to Date" form for "$23,925.68, in order to complete the total amount of your [Conway Steel's] invoice" (Dkt. No. 2, at 21). Ms. Weems stated in that email that "[a]s soon as Dick's pays us, we will be sending our check to you" (Dkt. No. 2, at 21). In addition to these email communications regarding the waiver of lien forms, Ms. Weems sent approximately nine other emails to Conway Steel regarding its work and payment for its work on the project. These communications occurred over the course of approximately eight months.

Conway Steel asserts that "[n]otwithstanding notice of Conway Steel's claim and the direct contradiction of the contract between Dick's Sporting Goods and Stabridg and in violation of the waiver of lien form required by Dick's Sporting Goods, contract proceeds were paid directly to Stabridg that belonged to Conway Steel" (Dkt. No. 2, at 5).

On February 27, 2012, Jeff Tarris with Dick's emailed Mr. Freyaldenhoven with Conway Steel and stated, "We have paid Stabridg for the steel package at this job. My understanding is that Stabridg used that money to pay debts incurred on a residential project on the Gulf Coast and is now attempting to collect money owed on that project to pay you. At least that is what Keith has told me but I can not be certain" (Dkt. No. 2, at 24).

3

Conway Steel maintains that "[a]s a result of the ongoing representation by Dick's Sporting Goods and Stabridg, Conway Steel did not assert its statutory mechanics and materialmans lien rights in a timely manner. But for the representations by Dick's Sporting Goods and Stabridg, Conway would have perfected lien rights" on this project (Dkt. No. 2, at 6). Conway Steel alleges that "[a]t all material times hereto, Stabridg, Stacy, Bridgham, and Weems were all engaged in an effort to delay, hinder, and defraud Conway Steel" (Dkt. No. 2, at 6). Conway Steel asserts causes of action against Ms. Weems, among others, for fraud and deceit, civil conspiracy, violation of Ark. Code Ann. § 5-37-525, deceptive trade practices, and promissory estoppel.

## II.  STANDARD

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant." *Digi-Tel Holdings v. Proteq Telecoms.*, 89 F.3d 519, 522 (8th Cir. 1996). Such a *prima facie* showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). Although the plaintiff bears the ultimate burden of proof on personal jurisdiction when confronted with a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "If the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Id*. (citations omitted).

This action is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court in a diversity action may assume jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause of the Fourteenth Amendment. *Bell Paper Box, Inc., v. U.S. Kids., Inc*., 22 F.3d 816, 818 (8th Cir. 1994). The Arkansas "long-arm statute extends jurisdiction over nonresidents to the limits permitted by the due process clause of the United States Constitution." *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992). The Court's analysis in this case thus turns on whether the exercise of jurisdiction is permitted by the Due Process Clause, which requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Due process requires courts to consider the "quality and nature" of the defendant's activities. *Id.* at 319. Personal jurisdiction does not exist when the forum state "has no contacts, ties, or relations" to the defendants. *Id.* The Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In *World-Wide Volkwagen Corp. v. Woodson*, the Supreme Court concluded that "the defendant's conduct and connection with the forum State" were such that he could "reasonably anticipate being haled into court there." 444 U.S. 286, 297 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction as a result of 'random,'

5

'fortuitous,' or 'attenuated,' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

When deciding a personal-jurisdiction issue, this Court considers five factors to determine whether the exercise of jurisdiction is consistent with due process, "with the first three factors being of primary importance . . . ." *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). The first three factors are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum; [and] (3) the relation of the cause of action to these contacts . . . ." *Digi-Tel Holdings*, 89 F.3d at 522-23. The last two secondary factors are: "(4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id*. *See also Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

When a defendant avails herself "of the privilege of conducting business" in the forum state such that her "activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require [her] to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476. Moreover, "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.*

Although mail, fax, and telephone communication do not alone establish personal jurisdiction, "in conjunction with other contacts they may support the exercise of personal jurisdiction." *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995). *See also Acxiom Corp. v. Briggs*, 4:12CV00165 SWW, 2012 WL 5185870 (E.D. Ark. Oct. 18, 2012) ("[C]ommunications directed to Arkansas via email and telephone do not alone satisfy due process requirements, but they count toward minimum contacts that support personal jurisdiction." (citing *Northrup King*, 51 F.3d at 1388)).

Finally, as to any suggestion that a different standard should apply to the personal jurisdiction analysis in regard to Ms. Weems given her position within Stabridg, in *Calder v. Jones*, two individuals, a magazine editor and a reporter, were primary participants in the alleged wrongdoing, the circulation of an allegedly libelous magazine article in another state. 465 U.S. 783 (1984). The Supreme Court determined that "their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." *Id.* at 790. This assessment is "not to be judged according to their employer's activities [in the forum state]." *Id.* at 790. *See generally Torchmark Corp. v. Rice*, 945 F.Supp. 172 (E.D. Ark. 1996).

The facts in the *Calder* case also gave rise to the *Calder* "effects test." Under the *Calder* "effects test," when an intentional tort is alleged, the assertion of personal jurisdiction over a nonresident defendant is allowed if that defendant's actions "are performed for the very purpose of having their consequences felt in the forum state." *Johnson*, 614 F.3d at 796. This test, however, "is merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.* at 796-97. The test is construed narrowly, "absent additional

7

contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797

## III. ANALYSIS

The issue before the Court is whether Ms. Weems's contacts with Arkansas are sufficient to allow the Court to exercise personal jurisdiction over her consistent with due process. The first three factors considered when evaluating personal-jurisdiction support this Court's exercising jurisdiction over Ms. Weems in this case. Ms. Weems's relevant connection with Arkansas was her sending emails to Conway Steel regarding payment allegedly owed by Stabridg to Conway Steel. Although Ms. Weems focuses on her nearly nonexistent physical contacts with Arkansas, it is clear that alone does not defeat an exercise of personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 476. On at least two separate occasions, Ms. Weems sent Conway Steel a request for waiver of lien rights. Other than those occasions, the record reflects that Ms. Weems sent at least nine other emails regarding the status of Stabridg's allegedly pending payment to Conway Steel. The emails in question reflect that Conway Steel was not getting paid as quickly as it would have liked and also reflect that Ms. Weems was Conway Steel's contact person regarding the status of payment. In her affidavit, Ms. Weems states that, when Conway Steel inquired about payment, she "passed along the information given [to her] by Keith Bridgham" (Dkt. No. 17-1, at 2).

By sending two requests for waiver of lien rights and being the contact person with whom Conway Steel inquired about payment, on the record before the Court, it appears that Conway Steel relied on Ms. Weems to provide it with information regarding the status of payment and also communicated with her regarding other important matters with legal ramifications, specifically the waivers of lien rights. Ms. Weems essentially asserts that she was

8

just passing along information, but the record reflects that she repeatedly communicated with Conway Steel about the status of Stabridg's payment to Conway Steel. The issues surrounding payment from Stabridg to Conway Steel ultimately gave rise to this lawsuit. Moreover, Ms. Weems sent legal documents to Arkansas for an Arkansas company to execute in connection with an Arkansas construction project. An assessment of Ms. Weemss contacts—judged apart from Stabridg's contacts—demonstrates that her contacts were not random or attenuated; rather, her efforts were "purposefully directed toward" residents of Arkansas. *See Burger King*, 471 U.S. at 476.

Ms. Weems, on behalf of Stabrig, had numerous contacts with Conway Steel about issues involving payment and having legal ramifications. Moreover, as Conway Steel argues, the issues discussed in those emails are directly related to the allegations in this lawsuit. The Court concludes based on the record before it that Ms. Weems purposefully availed herself of the privilege of doing business in Arkansas, despite the fact that her relevant contacts were via email. Because her status as an employee does not insulate her from an exercise of jurisdiction, *Calder*, 465 U.S. at 790, the Court is not persuaded by Ms. Weems's arguments regarding her limited authority and role at Stabridg. Accordingly, the first three factors weigh in favor of this Court exercising personal jurisdiction over Ms. Weems.

As to the fourth factor, Arkansas has an interest in providing a forum for Conway Steel, a resident corporation. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595 (8th Cir. 2011). The fifth and final factor is essentially neutral. A trial in Alabama would be just as inconvenient for Conway Steel as a trial in Arkansas would be for Ms. Weems.

Because some of Conway Steel's causes of action against Ms. Weems are intentional torts, the Court's inquiry does not end with the five factors discussed thus far. The Court also

must consider the *Calder* "effects test" where, as here, an intentional tort is alleged. Under this test, the assertion of personal jurisdiction over a nonresident defendant is allowed if that defendant's actions "are performed for the very purpose of having their consequences felt in the forum state." *Johnson*, 614 F.3d at 796. This additional factor weighs in favor of this Court's asserting personal jurisdiction over Ms. Weems. As alleged, Conway Steel contends that Ms. Weems's communications regarding lien waivers and payment are the basis for intentional tort claims and were performed for the purpose of having their consequences felt in Arkansas where Conway Steel and this construction project were located.

Viewing the facts in the light most favorable to Conway Steel, as the Court is required to do at this stage, the Court concludes that Conway Steel has made a *prima facie* showing of personal jurisdiction over Ms. Weems. The Court concludes that an exercise of personal jurisdiction over Ms. Weems is consistent with due process. Accordingly, Ms. Weems's motion to dismiss is denied (Dkt. No. 17).

SO ORDERED this the 10th day of May, 2013.

_____
Kristine G. Baker
United States District Judge